UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OUTSTATE MICHIGAN TROWEL
TRADES HEALTH and WELFARE
FUND, et al.,

      Plaintiffs,

v.

ALPHA CONCRETE CORPORATION,
et al.,

      Defendants.
                                         /

File No. 1:07-CV-746

HON. ROBERT HOLMES BELL

## **O P I N I O N**

Plaintiffs Outstate Michigan Trowel Trades Health & Welfare Fund, Operative Plasterers and Cement Masons International Association Joint Apprenticeship and Training Fund, Cement Masons Local 514 of the Operative Plasterers and Cement Masons International Association of the U.S. and Canada ("Union"), and Outstate Michigan Trowel Trades Pension Fund filed this action against Defendant Alpha Concrete Corporation ("Alpha") to collect contributions due under a collective bargaining agreement, and against Alpha's president, Mark McAllister, based upon his alleged personal responsibility for the indebtedness of Alpha under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461, and the Michigan Building Contract Fund Act, M.C.L. §§ 570.151-.153.

This matter is currently before the Court on the parties' cross-motions for summary judgment. (Dkt. No. 45, Pls.' Mot for SJ; Dkt. No. 49, Defs.' Mot for SJ.) For the reasons that follow the motions will be denied.

## I.

Alpha performs road work on jobs for the Michigan Department of Transportation, cities, municipalities, and private developers. (Dkt. No. 46, Pls.' Br. in Supp. of Mot. for SJ, Ex. C, McAllister Dep. 22.) On April 15, 2005, Alpha entered into an Agreement with Cement Masons Local 514 of the Operative Plasterers and Cement Masons International Association of the United States and Canada ("the Alpha Agreement") (Pls.' Br. in Supp. of Mot. for SJ, Ex. A, Alpha Agrm't; Dkt. No. 50, Defs.' Br. in Supp. of Mot. for SJ, Ex. 1, Alpha Agrm't.) The Alpha Agreement incorporates by reference at least part of the collective bargaining agreement entered into between the Labor Relations Division of the Michigan Road Builders Association and the Operative Plasterers and Cement Masons International Association of the United States and Canada, AFL-CIO and the International Union of Bricklayers and Allied Craftworkers, AFL-CIO ("the Road Builders Agreement"). (*Id.*) By signing the Alpha Agreement Defendants agreed to make contributions to Plaintiffs with respect to covered work performed by and wages paid to employees of Alpha and to make Alpha's books and records available for periodic inspection and audit. (Def.'s Answer ¶ 10.)

Alpha began paying contributions and dues on all work performed by cement finishers for a period of time, but then began falling behind on payments. (Dkt. No. 47, Messing Aff. ¶¶ 4-5). In July 2006, Plaintiffs' payroll auditor reviewed Alpha's books and records. (Messing Aff. ¶ 7.) Based upon the audit and additional records provided during this litigation, the auditor has concluded that Alpha owes $100,861.34 in unpaid contributions, $12,433.95 in unpaid dues, and $10,086.13 in liquidated damages. (Messing Aff. ¶ 18.) Plaintiffs filed this action for collection of unpaid contributions and dues on January 31, 2007.

The parties have filed cross-motions for summary judgment. Plaintiffs contend that they are entitled to judgment as a matter of law in the amount of $113,295.29 for delinquent contributions and dues, plus interest, liquidated damages, costs, and attorneys' fees. According to Plaintiffs the record establishes that the contract is not limited to those jobs listed on Addendum #1 and Addendum #2 ("Addendum Jobs"); that even if the contract is limited to Addendum Jobs that Alpha is still indebted to Plaintiffs; and that McAllister is personally liable for the indebtedness of Alpha. Defendants contend that they are entitled to a judgment of no cause of action as a matter of law. According to Defendants the record establishes that the Alpha Agreement limits Alpha's responsibility for contributions to Addendum Jobs; that Alpha has mistakenly paid more than it owed for the Addendum Jobs; and that McAllister is not personally liable for Alpha's indebtedness.

3

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim then the nonmoving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

Where the moving party bears the ultimate burden of persuasion at trial, "the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Cockrell v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create a genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

The primary issue raised by the cross-motions for summary judgment is the scope of the work covered by the Alpha Agreement. Plaintiffs and Defendants both contend that the Alpha Agreement is unambiguous, but they have sharply contrasting ideas about what work is covered by the Alpha Agreement. Plaintiffs contend that the Alpha Agreement requires Alpha to pay contributions and dues based on work performed on all Road Builders Jobs as defined in the Road Builders Agreement. Defendants contend that the Alpha Agreement limits Alpha's liability for contributions to Addendum Jobs.

An employer's obligation to make contributions to a multi-employer ERISA fund is governed by the terms and conditions of the relevant collective bargaining agreement. 29 U.S.C § 1145; *DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 653 (2d Cir. 1994). Courts generally apply traditional rules of contract interpretation to the enforcement and interpretation of collective bargaining agreements. *UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983); *Kellogg Co. v. NLRB*, 457 F.2d 519, 526-27 (6th Cir. 1972). "Unless ambiguous, a collective bargaining agreement is limited to the language contained in its four corners." *Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enter., Inc.*, 163 F.3d 965, 969 (6th Cir. 1998). "Whether a contract term is ambiguous is a question of law for the court to determine." *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1025 (6th Cir.

2001). Parties are free to limit the scope of a collective bargaining agreement. *Id.* at 1024 (citing *Craig v. Severino, Inc.*, No. 93-3516, 1994 WL 259456 (6th Cir. June 13, 1994)). For example, in *Severino* "the parties signed a duplicate of a collective bargaining agreement, but specified in writing on the contract that it was limited in scope to just one job. The court found that the parties had executed a new agreement, with the limitation included." *Id.*

Alpha's obligations for contributions and dues are governed by the Alpha Agreement. Paragraph 1 of the Alpha Agreement provides that "[e]xcept as provided in paragraph 2," Alpha agrees to the terms of the Road Builders Agreement. Paragraph 2 provides that the Alpha Agreement "shall apply to work performed on the projects listed on the attached Addendum 1." Addendum 1 contains the phrase "List of projects to which Agreement Shall apply," and a list of twenty-four projects. Paragraph 3 provides that the Alpha Agreement self-perform.[1] Addendum #2 contains the phrase "List of projects to which Agreement shall

---

[1]The Alpha Agreement provides:

1. Except as provided in paragraph 2, below, Alpha Concrete Co. of 271 North Helmer Road, Battle Creek, Michigan 49015 ("Alpha Concrete") hereby agrees to the terms and conditions set forth in the Agreement between the Labor Relations Division of the Michigan Road Builders Association and the Operative Plasterers and Cement Masons International Association of the United States and Canada, AFL-CIO and the International Union of Bricklayers and Allied Craftworkers, AFL-CIO ("the Union") effective June 1, 2003 through May 31, 2008. Alpha Concrete Corporation agrees that, unless it notifies the Union to the contrary by registered mail at least sixty (60) days prior to the termination date of this agreement or any subsequent Agreement, Alpha Concrete Corporation will be bound by and adopts any successor agreements negotiated by the Union and the Association.

(continued...)

shall apply to work performed on the projects listed on Addendum 2 unless Alpha does not apply," and a list of four projects.

>The jobs covered by the Road Builders Agreement are
>
>all airport construction work (exclusive of buildings) and all highway and bridge construction work which any Contractor bound by this Agreement performs within the State of Michigan and which comes within the jurisdiction of the Union.

(Road Builders Agrm't, Art. I(a).) The Road Builders Agreement broadly defines "highway construction" as

>all work ordinarily included in public or private contracts for the construction of highways, roads and streets, whether inside or outside private property lines, such as, by way of examples, bridges, sewers and street grading, street paving, curb settings, sidewalks, parking lots, running tracks, bicycle paths, bridle paths and work connected therewith.

(Road Builders Agrm't Art. I(b).)

---

[1](...continued)
2. This agreement shall apply to work performed on the projects listed on the attached Addendum 1.

3. This agreement shall apply according to the following clause to work performed on the projects listed on the attached Addendum 2. If Alpha Concrete Corporation self-performs the work it shall be according to the Michigan Road Builders Agreement. If Alpha Concrete does not self-perform the agreement does not apply.

(Alpha Agrm't.)

Plaintiffs contend that because the Alpha Agreement incorporates by reference the Road Builders Agreement, all of the jobs identified in the Road Builders Agreement ("Road Builders Jobs") are subject to the Alpha Agreement, as well as the Addendum Jobs.

Defendants, on the other hand, contend that because paragraph 1 begins with the phrase "[e]xcept as provided in paragraph 2," and because paragraphs 2 and 3 specifically provide that the Alpha Agreement applies to the projects listed on Addendum 1 and Addendum 2, the implication is that the scope of the Alpha Agreement is limited to the Addendum Jobs.

The meaning of the Alpha Agreement is not as clear as either Plaintiffs or Defendants contend.  While parties may limit the scope of a collective bargaining agreement, it is not clear whether they have done so in this case.  Paragraph 1 of the Alpha Agreement incorporates the Road Builders Agreement "[e]xcept as provided in paragraph 2."  The phrase "except" generally suggests that there will be an exclusion.  Paragraph 2, however, provides that the Alpha Agreement applies to certain listed projects.  It is a paragraph of inclusion rather than exclusion.  Neither paragraph 2 nor paragraph 3 indicates that the listed projects are the "only" projects covered by the agreement.  While "except as provided in paragraph 2" could be understood to mean that the Road Builders Agreement is incorporated except as to the scope of the work covered by the Road Builders Agreement, this is neither the natural nor the only meaning that could attach to the phrase.  The ambiguity is increased by the fact that paragraph 1 only excepts paragraph 2, even though paragraph 3 also clearly references covered work.

The Court concludes that the Agreement is ambiguous with respect to the scope of the work covered by the Alpha Agreement. Based upon the face of the Agreement, the Court cannot say, as a matter of law, whether Alpha's contribution obligation extends to all jobs covered by the Road Builders Agreement, or whether it is limited to those jobs identified on Addendum #1 and Addendum #2.

When there is an ambiguity on the face of the written agreement the Court may consider extrinsic evidence relating to the parties' original understanding of the contract's terms. *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 441 (6th Cir. 2007) (citing *McCoy v. Meridian Auto. Sys.*, 390 F.3d 417, 422 (6th Cir. 2004)).

Plaintiffs contend that the addenda to the Alpha Agreement were designed to illustrate the types of jobs that were covered by the Road Builders Agreement rather than to limit the jobs covered by the Road Builders Agreement. In support of this position Plaintiffs have presented the affidavit of Joel Santos, a business agent for the Union who was one of the signatories to the Alpha Agreement. According to Santos, Alpha was going to be removed from certain Michigan Department of Transportation ("MDOT") highway construction projects if it did not sign a union contract. (Santos Aff. ¶ 4.) Santos met with Mark McAllister of Alpha to reach an agreement that Alpha would be bound by the terms of the Road Builders Agreement. (Santos Aff. ¶ 5.) McAllister wanted to exclude from the Road Builders Agreement residential jobs and jobs that had been awarded to Alpha or that Alpha had bid prior to April 15, 2005. (Dkt. No. 60, Santos Aff. ¶ 9). Santos refused McAllister's proposal for a blanket exclusion of jobs that had been awarded or bid prior to April 15, 2005,

9

but explained that residential jobs were not covered by the Road Builders Agreement. (Santos Aff. ¶¶ 8, 10.) According to Santos, the Addendum Jobs are jobs of the type described in the Road Builders Agreement that had been awarded or bid as of April 15, 2005. (Santos Aff. ¶ 13.) Santos's understanding of the Alpha Agreement is that Alpha agreed to pay contributions and dues on behalf of all employees performing cement finisher work on jobs of the type described in the Road Builders Agreement, including jobs that had been awarded or bid as of April 15, 2005, as listed on the addenda, and any other job described in the Road Builders Agreement on which the company's employees performed work after the Agreement was signed. The only exception was for jobs set forth on Addendum 2 in the event that Alpha subcontracted the work to another company. (Santos Aff. ¶ 16.)

Plaintiffs have also presented evidence that Alpha began making contributions on non-Addendum jobs from the time it signed the Alpha Agreement, and continued to do so even after the commencement of this litigation. (Messing Aff. ¶ 31.) Plaintiffs contend that Alpha's consistent practice of making contributions on non-Addendum Jobs confirms Santos's understanding of the meaning of the Alpha Agreement.

Defendants contend that the addenda were designed to limit Alpha's responsibility for contributions to the listed projects. In support of this position they have offered two declarations from Mark McAllister, the other signatory to the Alpha Agreement. McAllister states that after considerable discussion with the union representative over which jobs the contract would apply to, they ultimately agreed that the contract would apply to the Addendum Jobs. (Defs.' Br. in supp. of Mot. for SJ, Ex. 3, McAllister Decl. ¶ 5.) McAllister

10

explains that Alpha's contributions relating to non-Addendum Jobs from May 2005 through October 2006 were the result of oversight or mistake and were not made intentionally or with the assumption that Alpha was bound to any agreement other than the Alpha Agreement. (Dkt. No. 58, Defs.' Resp. Br., Ex. 2, 2d Decl. of McAllister, ¶ 8.)

The parties have presented conflicting evidence regarding the intent of the parties. In arguing for summary judgment they have suggested that the Court weigh or consider the credibility of the extrinsic evidence presented. (Dkt. No. 59, Pls.' Resp. Br. 11; Dkt. No. 58, Defs.' Resp. Br. 6.) "In a motion for summary judgment, '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255). Viewing the evidence in this case in the light most favorable to the non-moving party, the Court finds that there are material issues of fact regarding the scope of the work covered by the Alpha Agreement. Summary judgment is not appropriate when the evidence raises a genuine issue about a material fact. Fed. R. Civ. P. 56(c). "The fact that [both plaintiff and defendants] have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). Plaintiffs' motion for summary judgment against Defendant

Alpha and Defendant Alpha's motion for summary judgment of no cause of action on Plaintiffs' claims against Defendant Alpha will accordingly be denied.

## IV.

The parties' cross-motions for summary judgment also address Plaintiffs' claim against Defendant Mark McAllister. In Count II of their first amended complaint Plaintiffs allege that McAllister was a fiduciary with control over the operations of Alpha, and that he failed to make payments for fringe benefit contributions accrued by employees of Alpha in violation of his obligations under ERISA and the Michigan Building Contract Fund Act. (Dkt. No. 20, First Am. Compl., Count II.)

Plaintiffs request summary judgment against McAllister based upon Plaintiffs' contention that McAllister is personally liable under the Michigan Building Contract Fund Act for Alpha's failure to make fringe benefit contributions. Plaintiffs' claim against Mark McAllister arises from and is dependent on the same facts as their claim against Alpha. In light of the Court's determination that there are questions of fact that preclude a judgment on Plaintiffs' claim against Alpha, Plaintiffs' motion to hold McAllister liable must also be denied.

In their cross-motion Defendants request summary judgment in favor of McAllister because Plaintiffs have failed to prove that Alpha was obligated to make any contributions other than with respect to the Addendum Jobs, and because Plaintiffs have failed to show that McAllister meets the statutory definition of a fiduciary.

ERISA provides that a person is a fiduciary with respect to a plan to the extent "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). ERISA also provides that a fiduciary who breaches any his responsibilities "shall be personally liable to make good to such plan any losses to the plan" resulting from the breach. 29 U.S.C. § 1109(a).

In support of their request for summary judgment on behalf of McAllister, Defendants have presented evidence that McAllister is only a one-third owner of Alpha, and that the calculation of fringe benefit contributions were handled by Alpha's accountant, not by McAllister. (Def.s' Br. in Supp. of Mot. for SJ, Ex. 5, McAllister Dep. 7, 37-39.) In response, Plaintiffs have presented evidence that McAllister's role was to review and to approve the payment of Alpha's bills. (McAllister Dep. 39.)

Plaintiffs' evidence is sufficient to create an issue of fact as to whether McAllister exercised any discretionary authority or control respecting the management or disposition of Alpha's assets such that he could be considered a fiduciary under 29 U.S.C. § 1002(21)(A)(i). Because, as noted above, there are questions of fact that preclude a determination of whether Alpha owed contributions to Plaintiffs for non-Addendum Jobs, there are also questions of fact as to whether McAllister breached his ERISA responsibilities by failing to make contributions on non-Addendum Jobs. Accordingly, Defendants' motion for summary judgment on Count II, to the extent it alleges an ERISA claim against McAllister, must be denied.

## V.

Defendants have also requested summary judgment against Plaintiff Union. Defendants contend that the Union has no standing, that the Union is not a real party in interest, and that the Union has asserted no factual basis for any claim. Defendants note that apart from introducing the Union as a plaintiff, there are no further references to the Union in Plaintiffs' first amended complaint. Defendants contend that because 29 U.S.C. § 1132 does not list unions as among those empowered to bring a civil action under ERISA, the Union lacks standing to bring this action and any claim put forth by the Union must be dismissed.

Plaintiffs' first amended complaint properly introduces the Union as a plaintiff and indicates that jurisdiction is predicated not only on ERISA, but also on Sections 301 and 302 of the Labor Management Relations Act of 1947 as amended ("LMRA"), 29 U.S.C. §§ 185, 186. (First Am. Compl. ¶¶ 1, 5.)  "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). To the contrary, all the Rules require is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting *Conley*, 355 U.S. at 47). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512.

Although Plaintiffs' first amended complaint does not specifically mention union dues, the Union's claim for dues arises out of the same collective bargaining agreement as the other plaintiffs' claims for fringe benefit contributions. The references in the first amended complaint to the Union, the collective bargaining agreement and the LMRA are sufficient to put Plaintiffs on notice of the Union's claim. Moreover, during the course of this litigation, if not earlier, Defendants have had access to Article II of the Road Builder's Agreement referencing the duty to pay union dues, and to Plaintiffs' audit results showing specific amounts owing for union dues. The Union's claim for dues is clearly before this Court. Accordingly, Defendants' motion to dismiss the Union's claims will be denied.

## VI.

For the reasons stated herein, the parties' cross-motions for summary judgment will be denied. An order consistent with this opinion will be entered.

Dated: <u>August 22, 2008</u>                          /s/ Robert Holmes Bell
                                                                                             ROBERT HOLMES BELL
                                                                                             UNITED STATES DISTRICT JUDGE