UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OUTSTATE MICHIGAN TROWEL
TRADES HEALTH and WELFARE
FUND, et al.,

        Plaintiffs,

                                    File No.  1:07-CV-746

v.

                                    HON. ROBERT HOLMES BELL

ALPHA CONCRETE CORPORATION,
et al.,

        Defendants.

_____/

## O P I N I O N

This action concerns the scope of a labor agreement.  In a previous opinion this Court

determined that the parties' Agreement was ambiguous with respect to the scope of the work

covered, and that extrinsic evidence could be considered on the issue of the parties' original

understanding of the terms of the Agreement. (Dkt. No. 69, 8/22/08 Op. 9.)  This matter was

tried to the Court on September 22, 2008.  The issue for trial was whether the Agreement

covers all road builders projects *including* those listed on Addendum #1 and Addendum #2,

or whether the Agreement is limited to *only* the projects listed on Addendum #1 and

Addendum #2.  The Court has carefully reviewed the trial testimony of Joel Santos, James

Oakley, Michael McAllister, and Faith Brovant, the documentary evidence introduced at trial,

and the parties' post-trial amended proposed findings of fact and conclusions of law.  This

opinion contains the Court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

## I.

Plaintiffs Outstate Michigan Trowel Trades Health & Welfare Fund, Operative Plasterers and Cement Masons International Association Joint Apprenticeship and Training Fund, and Outstate Michigan Trowel Trades Pension Fund (the "Funds")  maintain their principal offices in Lansing, Michigan.  The Funds are trust funds established under, and administered pursuant to, Section 302 of the Labor-Management Relations Act of 1947, as amended (hereinafter "LMRA"), 29 U.S.C. §186, and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461.

Plaintiff Cement Masons Local 514 of the Operative Plasterers and Cement Masons International Association of the U.S. and Canada ("Local 514" or the "Union"), is an unincorporated labor organization representing employees in an industry affecting commerce. Local 514 is located in the Madison Heights, Michigan.

Defendant Alpha Concrete Corp. ("Alpha") is a corporation doing business in the building and construction industry, an industry affecting commerce within the meaning of 29 U.S.C. § 185 and 29 U.S.C. § 1002(5) and (12).  Alpha's principal place of business is in Battle Creek, Michigan.  Alpha was started eleven years ago by brothers Mark McAllister and Mike McAllister to do residential cement work.  Alpha now has thirty employees and is primarily involved in road work, including curbs, gutters, sidewalks, street reconstruction and patching.

In the fall of 2004 Alpha was working on a road construction job for John Carlos. Joel Santos, a union representative for Local 514, advised Mike and Matt McAllister that Alpha could not continue to perform the road work unless Alpha signed on to the collective bargaining agreement between Local 514 and the Michigan Road Builders Association (the "Road Builders Agreement"). The Road Builders Agreement covers the following work:

> all airport construction work (exclusive of buildings) and all highway and bridge construction work which any Contractor bound by this Agreement performs within the State of Michigan and which comes within the jurisdiction of the Union.

(Ex. 2, Road Builders Agrm't, Art. I(a).)  The Road Builders Agreement broadly defines "highway construction" as

> all work ordinarily included in public or private contracts for the construction of highways, roads and streets, whether inside or outside private property lines, such as, by way of examples, bridges, sewers and street grading, street paving, curb settings, sidewalks, parking lots, running tracks, bicycle paths, bridle paths and work connected therewith.

(Road Builders Agrm't, Art. I(b).)  The end of the Road Builders Agreement has a form that can be signed by employers who are not members of the Road Builders Association, but who agree to be bound by the Road Builders Agreement.  (Road Builders Agrm't 41-43.)

Alpha had no previous experience with union contracts and was not willing to enter into an agreement that would apply to all of its construction projects.  Alpha expressed its preference for signing a one-job agreement rather than a full contract.  The Union insisted on a full contract.  Alpha's job site was picketed and their concrete supply was stopped. Nothing was resolved in 2004.

Negotiations resumed in the spring of 2005.  On March 30, 2005, Joel Santos met with Mike McAllister at the Alpha offices in Battle Creek.  Mike McAllister wanted to exclude from the agreement all projects that had already been awarded or bid.  He produced a copy of the agreement Alpha had signed on March 23, 2005, with the Laborer's Union that excluded from its coverage "any project which was awarded to Alpha Concrete or which Alpha Concrete had bid prior to April 1, 2005." (Trial Ex. 11.)  He also produced a proposed agreement with Local 514 that would exclude from the Road Builders Agreement any projects that had already been awarded or bid.  (Trial Ex. 21 at 286.)  Santos faxed the proposed agreement to James Oakley, the business manager for Local 514.  Oakley responded that the proposal was not acceptable because the Union wanted a full-fledged agreement.

Two weeks later, on April 15, 2005, Santos and Oakley met with Mike, Mark, and Matt McAllister at Alpha's offices.  The Union was not prepared to exclude all projects that had been awarded or bid.  However, Oakley brought a proposed contract with a blank page on which to list projects that the parties agreed to exclude from the scope of the Road Builders Agreement.  Mike McAllister testified that during the morning meeting he and his brothers did not disclose all of Alpha's job contracts because they were concerned about Union picketing at Alpha's commercial job sites.  The parties were not able to reach an agreement on what projects should be excluded from the Road Builders Agreement.  Santos and Oakley left Alpha to return to Detroit.  After they left, Mark McAllister told his brothers

that they would have to show the Union officials everything because without a contract they would not receive monies that were being withheld by John Carlos.  Mike McAllister telephoned Santos and Oakley and asked them to return so that they could conclude a contract.

Santos and Oakley returned to Alpha.  At the afternoon meeting on April 15, the parties reviewed lists of projects that Alpha wanted to exclude from the Agreement.  Santos and Oakley reassured the McAllisters that the Road Builders Agreement did not apply to commercial or residential work, so those jobs would not need to be excluded.  They reviewed a list of projects that Alpha had bid on or was working on for the Michigan Department of Transportation ("MDOT").  Oakley agreed that some of these projects would not have to be included in the contract because they were small or near completion.  (Ex. 21 at 291.)

The agreement the parties ultimately signed provides as follows:

1.  Except as provided in paragraph 2, below, Alpha Concrete Co. of 271 North Helmer Road, Battle Creek, Michigan 49015 ("Alpha Concrete") hereby agrees to the terms and conditions set forth in the Agreement between the Labor Relations Division of the Michigan Road Builders Association and the Operative Plasterers and Cement Masons International Association of the United States and Canada, AFL-CIO and the International Union of Bricklayers and Allied Craftworkers, AFL-CIO ("the Union") effective June 1, 2003 through May 31, 2008.  Alpha Concrete Corporation agrees that, unless it notifies the Union to the contrary by registered mail at least sixty (60) days prior to the termination date of this agreement or any subsequent Agreement, Alpha Concrete Corporation will be bound by and adopts any successor agreements negotiated by the Union and the Association.

2.  This agreement shall apply to work performed on the projects listed on the attached Addendum 1.

3. This agreement shall apply according to the following clause to work performed on the projects listed on the attached Addendum 2. If Alpha Concrete Corporation self-performs the work it shall be according to the Michigan Road Builders Agreement. If Alpha Concrete does not self-perform the agreement does not apply.

(Ex. 1, Alpha Agrm't.) Addendum #1 lists twenty-four projects to which the Alpha Agreement "shall apply." Addendum #2 lists four projects to which the Alpha Agreement "shall apply" only if Alpha self-performed the work. (*Id.*) The lists on Addendum #1 and Addendum #2 include some, but not all of the projects Alpha bid on before April 1, 2005. For example, neither list included Alpha's purchase order numbers 1209, 1226, or 1241, that were substantially completed, or Alpha's purchase order numbers 1267 and 1269 that were small projects. (Ex. 21 at 291, 294-95.)

From April 15, 2005, to January 2007, Alpha made fringe benefit contributions on all road builders projects, not just the projects listed on Addendum 1 and Addendum 2. Alpha made its Fund contributions based upon fringe benefit contribution reports prepared by an outside payroll service. In preparing these reports the outside payroll service relied on information supplied by Alpha regarding the projects, and each employee's hours, classification, and salary. From April 15, 2005, until March 31, 2006, Seber Tans prepared the fringe benefit contribution reports for Alpha. In April 1, 2006, the responsibility for fringe benefit contribution reports was transferred to Midwest Employment Services. No one at Alpha ever instructed either Seber Tans or Midwest Employment Services to pay fringe benefits on only the work performed on the projects listed on Addendum #1 and Addendum #2.

In July 2006 Keith Messing, a payroll auditor, performed an audit of Alpha on behalf of the Funds. Faith Brovant, an Alpha employee, collected documents from Seber Tans and Midwest Employment Services in preparation for the audit. After reviewing the documents, Faith Brovant told Mark McAllister that she thought Alpha had overpaid the Funds. According to Faith Brovant, no one at Alpha thought Alpha was bound to make payments on projects other than those listed on Addendum #1 and Addendum #2.

There was no discussion between the parties at the April 15, 2005, meeting about future road builders projects. Santos and Oakley testified that future projects did not need to be discussed because it was understood and agreed that the Agreement applied to all road builders projects bid by or awarded to Alpha after April 15, 2005. Alpha argues that it was understood that the Agreement applied only to the road builders projects listed on Addendum #1 and Addendum #2, and that it did not apply to future projects.

Alpha's argument regarding the intended scope of the Agreement finds no support in the evidence. This argument contradicts Alpha's conduct both before and after the execution of the Agreement. Mike McAllister admitted that prior to executing the Agreement with Local 514 Alpha offered to sign a contract with the same terms as the contract Alpha entered into with the Laborers Union. Mike McAllister also admitted that he understood that the Laborers contract applied to all future projects. After executing of the Agreement with Local 514, Alpha made fringe benefit contributions not only on the projects listed on Addendum #1 and Addendum #2, but also on all additional road builders projects that Alpha bid on or

was awarded after the Agreement was executed.  Alpha's assertion that the overpayment was simply oversight is not credible in light of Alpha's failure to instruct the payroll services on the limited nature of their fringe benefit obligations.

Alpha's argument also defies logic and reason. It is not logical or reasonable to assume that Alpha agreed to the terms of the Road Builders Agreement with a stated effective date through May 31, 2008, if it was limiting its application to projects it was likely to complete in 2005.  It is not logical or reasonable to assume that Local 514 rejected Alpha's proposal to exclude a limited number of projects already bid for 2005, but then agreed to a contract that excluded all future projects for the next three years.  It is not logical or reasonable to assume that Local 514 and Alpha spent hours discussing individual projects that had already been bid, but failed to discuss the bigger issue of future projects, if that issue really was in contention.

Based upon the language of the contract and the extrinsic evidence of the parties' negotiations and conduct after the execution of the contract, the Court concludes that the parties' intention was only to exclude work that had already been bid.  There was no intention and no discussion about limiting Alpha's responsibility to comply with the Road Builders Agreement for road projects it bid on in the future.  The Alpha Agreement accordingly requires Alpha to comply with the Road Builders Agreement with regard to all hours worked on road builders projects.

In light of this finding, Plaintiff Funds are entitled to judgment in the amount of $100,861.34, for unpaid contributions based on work performed from April 2005 through December 2007.  (Dkt. No. 83, Stip. on Damages ¶ I(A).)

The $12,835.05 Plaintiffs are currently holding in escrow will be applied to Alpha's indebtedness.  (Stip. on Damages ¶ V.)

The parties retain the right to file post-trial motions to recover liquidated damages, interest, and attorneys fees and costs.  (Stip. on Damages ¶ IV.)

## II.

Less than a week before trial, Alpha raised for the first time its defense that the Union is unable to maintain this action because it failed to exhaust the grievance procedure set forth in Article V of the Road Builders Agreement.  (Dkt. No. 79, Trial Br. 7-8.)

Plaintiff has filed a motion to strike the defense of failure to exhaust administrative remedies.  (Dkt. No. 83.)  Plaintiffs contend that they need not address Alpha's assertion that they had a duty to exhaust because Alpha is simply too late in raising this argument.  (*Id.*) In response, Alpha accordingly seeks leave to file its first amended answer and affirmative defenses to Plaintiffs' first amended complaint.  (Dkt. No. 84.)  Alpha contends that although the Union was a named plaintiff, there was no allegation of unpaid union dues, so the need to raise the affirmative defense was not clear, and the Union has not suggested what prejudice it would suffer if it were required to respect the provisions of the Road Builders Agreement.

The issue of the Union's failure to exhaust administrative remedies was not raised as an affirmative defense in Alpha's original answer or in its answer to the amended complaint. (Dkt. Nos. 5, 31.)  Neither was it raised in a dispositive motion.  The deadline for filing dispositive motions was April 4, 2008.  (Dkt. No. 43, Stipulated Order re Dispositive Mots.)  Alpha did file a dispositive motion regarding the Union's claim, but it only argued that the Union lacked standing to raise an ERISA claim.  (Dkt. No. 50, Mem. in Supp. of Defs.' Mot. for Summ. J., 19-20.)  Alpha's motion for summary judgment against the Union was denied because the Court's jurisdiction was predicated not only on ERISA, but also on the LMRA. (Dkt. No. 69, 8/22/08 Op. 14-15.)  The Court also noted that the complaint, the Road Builder's Agreement, and Plaintiff's audit results were sufficient to put Alpha on notice of the Union's claim for dues.  *Id.*

Failure to exhaust union grievance procedures is an affirmative defense rather than a jurisdictional bar.  *Sellers v. M.C. Floor Crafters, Inc*., 842 F.2d 639, 642 n.2 (2d Cir. 1988) (citing *Johnson v. Gen. Motors*, 641 F.2d 1075, 1079 (2nd Cir. 1981)); *Local 323 v. Int'l Union of Elec, Elec., Salaried, Mach. and Furniture Workers, AFL-CIO*, 160 F. Supp.2d 500, 506 (W.D.N.Y. 2001). Federal Rule of Civil Procedure 8(c) requires that affirmative defenses be set forth in a party's responsive pleading.  As a general rule, the failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case. *Old Line Life Ins. Co. v. Garcia*, 418 F.3d 546, 550 (6th Cir. 2005); *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). *See also Knight v. Int'l Longshoremen's Ass'n*., 457 F.3d 331, 344 n.15 (3d Cir. 2006) (noting that the union waived the affirmative defense of exhaustion of intraunion remedies by failing to raise it in its answer).

10

Alpha is correct in its assertion that the face of the complaint in this matter is not entirely clear on the issue of union dues. Nevertheless, from the time the complaint was filed Alpha knew that the complaint was filed on behalf of the Union, that the Road Builders Agreement required the deduction of union dues, and that the audit results reflected not only unpaid contributions, but also unpaid dues. (Ex. 21B, Messing Aff. ¶ 11.)

It appears to this Court that by failing to raise the issue of exhaustion in either its affirmative defenses or in its dispositive motion against the Union, Alpha has waived its right to complain about the Union's failure to exhaust the grievance procedures. In addition, the Court is aware of no good reason for not addressing the issue of dues at this time. In light of this Court's determination that Alpha was bound by the Road Builders Agreement for all road builders projects, this finding will control the issue of Alpha's liability for union dues for those same projects.

Accordingly, the Court will grant Plaintiffs' motion to strike Defendant's defense of failure to exhaust administrative remedies, and the Court will deny Defendant's request to file its first amended answer and affirmative defenses to Plaintiffs' first amended complaint. In light of this determination, the Court will enter an award of dues in this action. Plaintiff Union is entitled to judgment for unpaid dues in the amount of $12,433.95 based on work performed from April 2005 through December 2007. (Ex. 82, Stip. on Damages ¶ I(B).)

An order and judgment consistent with this opinion will be entered.

Dated: <u>November 19, 2008</u>                    /s/ Robert Holmes Bell
                                                  ROBERT HOLMES BELL
                                                  UNITED STATES DISTRICT JUDGE